UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES LEMOINE,

    Plaintiff,

    v.

STATE FARM GENERAL INSURANCE COMPANY,

    Defendant.

Case No. 15-cv-02941-WHO

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 20

## INTRODUCTION

In this dispute over insurance coverage of buildings plaintiff Charles Lemoine used to make and sell sausage, Lemoine failed to provide necessary information supporting his claims, despite repeated requests by defendant State Farm, and misinterpreted the insurance policy's requirements regarding appraisals. Accordingly, I GRANT State Farm's motion for summary judgment.

## BACKGROUND

The State Farm policy at issue is a business policy whose coverage included damage to buildings and structures and identified the following categories of property at the premises:

> …
> 2. permanently installed fixtures, machinery and equipment;
> 3. personal property owned by you that is used to maintain or service the buildings on the premises including:
>> . . .
>> d. appliances used for refrigeration, ventilating, cooking, dishwashing or laundering.

Ex. 1 at 2.[1] The policy imposes "duties" in the event of a loss and required a claimant, at State Farm's request, to give "complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed." *Id*. at 18. Importantly, Lemoine did not

---

[1] The categories quoted above are referred to as Category 2 and Category 3, respectively, in this Order.

obtain the optional Coverage B, which would have covered business personal property.  *Id*.; Oppo. 4-5.

Lemoine's first claim ("Claim 1," Claim No. 05-18C9-186) arose out of the March 2013 vandalism of and theft of copper pipe from a store front owned by Lemoine.   Declaration of Ronald Wiggins [Dkt. No. 20-1], Ex. 7.  Based on an estimate made by a contractor working for State Farm, State Farm paid Lemoine $192,478.13 for Claim 1.[2]  Ex. 17.

The second claim ("Claim 2," Claim 05-27M2-642) arose out of vandalism and theft that occurred in a separate building on the same property between late June and early July 2013.  Ex. 55.  Both buildings were previously used by Lemoine to make and sell sausage to the national market.  Ex. 46.   In addition to the structural damage, Lemoine claimed a loss of equipment for items used for sausage making.  Ex. 21, Ex. 35.

In early 2014, the parties exchanged correspondence regarding the lost equipment.  By February 2014, State Farm acknowledged that at least seven of the items of equipment were covered under "Category 2" of the policy because they were affixed to the structure.  Ex. 24.  In June 2014, State Farm's contractor provided an estimate for the vandalism damage. State Farm requested that Lemoine identify the lost equipment that was "attached to the building" and supply a price and age for the items.  Ex. 32.  In July 2014, State Farm followed up and asked for the age, condition, use and price for each item of lost equipment.  Ex. 33.

Lemoine did not provide any information as to the age, condition, use, or price of any of the lost equipment.  Instead, in September 2014, he provided an appraisal for the lost equipment that listed the value of the items in excess of $500,000.  Ex. 34.  The appraisal was based solely on the list of items of equipment provided to State Farm, assumed "like new" condition for the equipment, and used other assumptions, including assumptions about the size and capacity of pieces of equipment.  The appraisal did not consider any information about the actual age, condition, use, or price of the items.  Ex. 35.

State Farm followed up with Lemoine in November 2014 by phone and in writing, still

---

[2] Lemoine's estimates put the cost of repair at between $424,308.00 and $456,124.  Ex. 6, Ex.8.

seeking information on which items were physically attached to the property. Ex. 38. In December 2014, State Farm appeared to be ready to provide coverage for nine categories of lost equipment (noting that State Farm still needed information about the age and condition of those agreed-to items), but asserted that the rest of the items were excluded from coverage because they would fall under the optional business personal property coverage that Lemoine did not purchase (Coverage B). Exs. 37, 39. The items State Farm agreed to cover were either affixed to the building (and fell under Category 2) or were appliances used for refrigeration or cooking (and fell under Category 3). *Id*., Ex. 37.

In late December 2014, Lemoine responded, asserting that he was entitled to coverage for all items of equipment because they were either permanently installed fixtures or were used in cooking. Ex. 40. Lemoine also provided State Farm undated pictures of some of the equipment. *Id*. Additional correspondence followed in early 2015, with State Farm explaining that it would proceed with payment for the structural damage under Claim 2, but reasserting its requests for a copy of the police report for Claim 2 and requesting that Lemoine's counsel call the claims representative so that they could "discuss and agree upon the age and condition" of the agreed-to items. Ex. 41; *see also* Ex. 42 (2/9/15 letter from State Farm seeking the same information). Lemoine provided a copy of the missing police report in mid-February 2015. Ex. 43.

In March 2015, State Farm paid Lemoine $21,321.35 for the structural damage on Claim 2. Ex. 45. As to the equipment, State Farm's outside counsel concluded that the policy covered only permanently installed fixtures and appliances used for cooking, and that one additional piece of equipment (a smoke generator) would fall within the definition of an appliance used in cooking. Ex. 46. The letter noted Lemoine's continued failure to provide additional information about the age and condition of the equipment State Farm agreed was covered under the policy (nine types of equipment, plus the smoke generator) and failed to provide evidence showing how the disputed items (narrowed down to 24 types of equipment) were either permanently installed on the property or were the type of covered appliance used in cooking. *Id*.

In an April 2015 letter, State Farm reiterated those conclusions to Lemoine, but again offered to accept additional information about the agreed-to items' age and condition, and about

the disputed items that would show that they were either permanently installed or were appliances used for cooking. Ex. 47. The letter explained that the information regarding the age, condition, use, and price of the items was key because the policy required payment of "actual cash value," not current replacement value unless the items had already been replaced (which they had not). *Id*.

In early May 2015, having not heard back from Lemoine's counsel, Lemoine was warned that his claim would be closed if the requested information was not provided. When additional information was not received, State Farm closed the claim on May 29, 2015. Exs. 48, 49. In June, Lemoine's counsel responded and asked for the claim to be reopened, relying solely on the previously submitted appraisal and undated photos. Given the lack of new information, State Farm refused to reopen the claim and this lawsuit followed.

Lemoine asserts four causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and declaratory relief. State Farm moves for summary judgment, on the following claims: (i) breach of contract, because no additional benefits are owed to Lemoine under Claim 2; (ii) breach of the covenant of good faith and fair dealing for Claim 1, as that claim was handled reasonably; (iii) breach of the covenant of good faith and fair dealing for Claim 2, as that claim was handled reasonably and in reliance on outside counsel's advice; (iv) negligence for both Claims, as no negligence claim can be stated a matter of law based on State Farm's claim handling; (v) declaratory relief, because Lemoine has failed to prove the disputed stolen personal property is covered under the policy; and (vi) punitive damages, because there is no evidence of fraud, oppression, or malice in State Farm's handling of the claims.[3]

As an initial matter, Lemoine does not address or otherwise oppose the motion as to his negligence cause of action or his breach of covenant claim with respect to Claim 1.[4] Therefore,

---

[3] State Farm characterizes its motion as one for partial summary judgment. As explained below, because it appears that no causes or claims are left in dispute, full summary judgment is appropriately entered in State Farm's favor.

[4] In his conclusion, Lemoine faults defendant for not "presenting argument" that summary judgment is appropriate on his negligence cause of action. Oppo. 14. However, State Farm raised the issue, albeit it briefly, in its motion. Mot. 4, n.2. In opposition, Lemoine did not address the cases cited by State Farm that preclude a negligence claim based on claims handling. At oral argument, Lemoine's counsel indicated that Lemoine intended to "amend" to state a negligent misrepresentation claim, but otherwise provided no argument on the negligence cause of action

4

1   summary judgment is granted to State Farm on the third cause of action for negligence and partial
2   summary judgment is granted to State Farm on the second cause of action for breach of the
3   covenant of good faith and fair dealing with respect to the handling of Claim 1.  The remaining
4   issues are addressed below.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.*  The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*  However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

**DISCUSSION**

**I.      BREACH OF CONTRACT ON CLAIM 2**

Generally, a court's interpretation of an insurance policy is a question of law.  *Powerine Oil Co. v. Superior Court*, 37 Cal. 4th 377, 390 (2005).  The ordinary rules of contractual

---

actually plead in the First Amended Complaint.  An oral statement at the summary judgment hearing is hardly a basis on which to allow amendment of the complaint, and summary judgment in State Farm's favor on this cause of action is appropriate.

interpretation apply to insurance contracts. *Id*. Contractual language that is clear and explicit governs. *Id*. "The standard elements of a claim for breach of contract are: '(1) the contract, (2) Lemoine's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to Lemoine therefrom.'" *Wall St. Network, Ltd. v. N.Y. Times Co*., 164 Cal. App. 4th 1171, 1178 (2008) (quoting *Regan Roofing Co. v. Superior Court*, 24 Cal.App.4th 425, 434–435 (1994)).

State Farm argues that summary judgment must be entered on the breach of contract cause of action for Claim 2 because Lemoine failed to comply with his "duties" under the policy by (i) failing to provide age, condition, use, and price information for the agreed-to covered items, and (ii) failing to provide information or otherwise show that the disputed items were either permanently installed fixtures (and were not on wheels or otherwise portable) to fall within coverage of Category 2, or were "personal property . . . used to maintain or service the building" as "appliances" using heat to perform "cooking" to fall within Category 3.[5]

### A. Agreed-To Items

Lemoine argues that he fully complied with his duties required by the policy to the best of his abilities by providing a list of the missing equipment, an appraisal, and undated and unidentified pictures of some of the equipment.[6] Lemoine's position – as explained to State Farm during the claims process and asserted here in court – is that because he was in business for 40 years and several of the items are no longer manufactured, it would be hard to provide any information about the age, condition, use, or price of the items despite State Farm's repeated requests, and therefore he was not required to do so. Oppo. 10 ("Several of the items are no longer manufactured and would be impossible to replace and hard to date or price.").

Surprisingly, Lemoine provides *no evidence* explaining why he could not provide any

---

[5] The ten agreed-to items were either permanent fixtures or appliances used for refrigeration or cooking. There is no argument that any of the disputed items could be used for refrigeration, ventilating, dishwashing, or laundering. The only disagreement is whether any of the disputed items were appliances used for cooking, which State Farm defined as using "heat" to cook.

[6] Lemoine argues that if State Farm disagreed with his appraisal, under the policy defendant was required to secure its own appraisal. Oppo. 10 (relying on Ex. 1 (policy) at 19. However, the section of the policy Lemoine relies on comes into play only where a "written request for appraisal" occurs (and there is no evidence a written request was made here) and then dual appraisals take place with an umpire making the final call.

6

information to State Farm about the age, condition, use, or price of the agreed-to items. He did not submit a declaration. He does not identify any evidence in the record demonstrating that he had no additional information to provide. As State Farm repeatedly pointed out, the policy at issue provided for coverage for replacement value after a replacement was purchased (which no one asserts happened here) or actual cash value. Ex. 1, Section 1 Conditions, Condition 2. In order for State Farm to determine value, State Farm was entitled to all reasonably available information from Lemoine regarding actual cash value, which Lemoine never provided. His assertion (without proof) that it would be hard for him to provide this critical information is hardly persuasive. Simply because it would be "hard" to provide information as to the age, condition, use, and price of items does not mean Lemoine was excused from doing so or from submitting a declaration explaining what he did know about the items and why he could not provide any other information.

Under the policy, Lemoine had a duty to give an inventory of lost or damaged property that included "quantities, cost, [and] values" and to cooperate with State Farm's investigation of the claim. Ex. 1, Section 1 Conditions, Section 3. Where "no reasonable trier of fact could conclude [an insured] substantially performed [his] obligations or complied with the condition of [his] insurance contract requiring [him] to provide a proof of loss with supporting documentation," summary judgment is appropriate. *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 1000 (2010) (summary judgment appropriate where insured failed to fill out the entire proof of loss form, provided an incomplete proof of loss, listed values as "to be determined," and failed to provide detailed inventory and estimates for repair of damaged personal property or receipts and records supporting her additional living expenses).

On this record, Lemoine has not shown that he fulfilled his duty to cooperate with State's Farm's claim process. As such, State Farm did not breach the contract for failing to pay for the agreed-to items.

**B. Disputed Items**

As to Category 2, which covers "permanently installed fixtures, machinery and equipment," Lemoine argues that excluding items which are not "built-in" and are on rollers or

otherwise moveable would discriminate against smaller businesses that use portable equipment to accommodate smaller work areas or staffs. Oppo. 12. Lemoine ignores that Category 2 coverage applies only to "permanently installed" equipment. Equipment that is not permanently installed is not covered. Ex. 1 at 2. State Farm repeatedly offered to walk-through the property with Lemoine so that he could demonstrate how equipment was permanently installed, and asked for additional information from Lemoine about which specific pieces of the disputed items were permanently installed (other than a few of the agreed-to items). Lemoine never responded to those offers. Instead, he stuck with his position that all of the disputed items were covered either by Category 2 or Category 3.[7] There is no evidence in the record to support Lemoine's argument that any of the disputed items fell within coverage under Category 2.

Category 3, under State Farm's interpretation, provided coverage for "appliances" that "serviced the building" and were used for "cooking," through application of heat.[8] Lemoine argues that State Farm's attempt to restrict "cooking" to appliances that use heat is improper because even under the same dictionary definition State Farm relies on, "cooking" also covers the mixing and preparation of food for cooking: "[t]he practice or skill of preparing food by combining, mixing, and heating ingredients." Mot. 16. According to Lemoine's alternate definitions, cooking would also encompass equipment used for combining ingredients and separately equipment used to prepare food for cooking. Oppo. 11. Under these alternate, expanded definitions, coverage would be extended to "nearly all" of the items in dispute.[9] *Id*.

---

[7] Lemoine's consistent response to State Farm's request for more information about which specific pieces of equipment were permanently installed was that *all* of the items in dispute including hand carts, meat carts, scales, and stuffing horns were "part of the structure" and covered by Category 2, but if not, then by Category 3. *See, e.g.*, Ex. 40 (arguing all items in the appraisal report are "part of the structure" and covered). In his Opposition, Lemoine does not provide any argument or evidence that any specific disputed item was permanently installed.

[8] It also covered appliances used for refrigeration, ventilation, cooking, dishwashing, or laundering. But the only category at issue on this motion is cooking.

[9] Lemoine never definitely identifies all of the items he contends fall within his broader definitions of cooking. Instead, in his opposition, he identifies four specific items (Butcher Boy Grinder, Butcher Boy Mixer, Typer Stainless Steel Mixer, and Kramer & Grebe Cut Mix Chopper) that are involved in combining food, and then asserts that "nearly all" of the other disputed items in dispute would be covered under a definition of cooking that included preparation for cooking. Oppo. 11. Given Lemoine's continued overreach, he never identifies items that even under his

United States District Court
Northern District of California

I need not resolve which proposed definition of cooking should be applied under the policy. Category 3 covers personal property that is used to "maintain or service the buildings and premises," and includes (a) "fire extinguishing equipment," (b) "outdoor furniture or fixtures," (c) "floor coverings;" and (d) "appliances used for refrigerating, ventilating, cooking, dishwashing or laundering." Ex. 1. Section 1 Property Coverage, Coverage A – Buildings. When read in that context, there is no support for the argument that the items in dispute – stuffing horns, vacuum machines, gondolas, meat hooks, choppers and grinders – are the sorts of "appliances" that are used to "service" the buildings and, therefore, fall within the "building coverage." The examples of equipment necessary to service or maintain a building – even if that building is used as a food production facility – are general appliances that one would find in a food production facility (*e.g.*, stoves, refrigerators, dishwashers), *not* specialty equipment that is particular to one type of manufacturing process. The disputed items are specific to the manufacture of sausage and not to the operation of a building used generally for food production.[10] This point is strengthened by the fact that Coverage B – which was not purchased by Lemoine – covers "property you own that is used by you in your business." Ex. 1, Section 1 Property Coverages, Coverage B – Business Personal Property. There is no evidence in the policy itself that supports expanding "Building" coverage to include what are essentially tools of the sausage making trade that were used in Lemoine's business but were not inherently necessary to service or maintain a general food production facility.

Finally, even if some the disputed items were covered under Category 3, Lemoine runs up against the same problem that I identified above. Lemoine never, despite repeated requests, provided any information to State Farm as to the age, condition, use, or price of the disputed items so that State Farm could assess the actual value of those items (including depreciation, etc.). Even on this motion, he fails to submit *any evidence* that he was unable to provide that information. On

---

preferred broader definitions do not involve combining or preparing food for cooking, *e.g.*, tables, hooks, carts.

[10] It is also worth noting that many of the disputed items are not "appliances," and therefore likewise excluded from coverage, *e.g.*, hand carts, meat trucks, gondolas, hooks, tables.

9

these undisputed facts and the record before me, no breach of contract claim can be asserted with respect to Claim 2 against State Farm. Summary judgment is GRANTED to State Farm on the first cause of action.[11]

## II. BREACH OF IMPLIED COVENANT ON CLAIM 2

"[T]o establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990); *see also Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006) ("a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. . . . There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" (internal citation omitted)).

"Withholding benefits due under the policy is not unreasonable if there was a genuine dispute between the insurer and the insured as to coverage or the amount of payment due." *Rappaport-Scott v. Interinsurance Exchange*, 146 Cal. App. 4th 831, 837 (2007). However, "the genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007).

---

[11] In the Opposition's conclusion, Lemoine asserts that disputed material facts "exist in Lemoine's causes of action related to breach of contract for Claim I and II." Oppo. 14. There is nothing in the record that shows Lemoine pleaded or has litigated a breach of contract cause of action with respect to Claim 1. The First Amended Complaint does not expressly include or exclude Claim 1 from the breach of contract cause of action. Dkt. No. 9. However, in the parties' September 2015 Joint Case Management Conference Statement, Lemoine alleged that his breach of contract claim was based on allegations that State Farm refused "to pay for vandalized or stolen items in a timely manner," showing that the breach of contract claim was limited to payments under Claim 2. Dkt. No. 13 at 2. Summary judgment, therefore, is appropriately entered on the first cause of action in full. The cause of action for declaratory relief rises and falls with the breach of contract cause of action. Accordingly, summary judgment is granted on the declaratory relief cause of action in full.

"While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001), *as modified on denial of reh'g* (July 30, 2001). Where there is a "genuine dispute" over an insurer's duty to pay benefits, the insurer does not breach the implied covenant. *Id*. at 347.

Lemoine argues that State Farm breached the covenant here by: (i) withholding payment on the ten items it agreed were covered; and (ii) arguing that Lemoine breached his duty by failing to provide additional information when, under the policy, State Farm had a duty under the policy to conduct its own appraisal. Oppo. 13. As noted in footnote six, the portion of the policy discussing appraisals only comes into play when there is a written demand. Lemoine did not make a written demand, so State Farm did not breach its appraisal duty. And as to the withholding of payment for the ten agreed-to items, State Farm repeatedly asked Lemoine for information about their age, condition, use, and price. Lemoine's answer – that given the age of the company, he could not be expected to provide additional information – is without evidentiary support in the record and does not insulate him from a duty to attempt to provide good faith estimates in response to State Farm's reasonable inquiries.

On the record before me, where no material facts are in dispute, the breach of covenant claims fails as a matter of law as to Claim 2. Summary judgment is GRANTED to State Farm on the second cause of action.

### III. PUNITIVE DAMAGES

A claim for punitive damages requires Lemoine to prove by clear and convincing evidence that State Farm is guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(a). In the insurance coverage context, no claim for punitive damages can be sustained where the insurer has a good faith basis for failing to pay under a policy. Because I am granting summary judgment on the breach of contract cause of action as to Claim 2, Lemoine has no claim for punitive damages arising from State Farm's failure to pay under the policy. *See, e.g., Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1362 (9th Cir. 1993) ("Nothing in California law suggests a

refusal to provide coverage as requested by an insured, when the refusal is supported by a reasonable, good faith argument, can form the basis for punitive damages.").

Lemoine opposes summary judgment on his request for punitive damages because it "is not yet known if facts supporting punitive damages may arise at trial." Oppo. 14. However, fact discovery has closed. Lemoine fails to point to *any facts* that could support a claim of punitive damages as to any of his claims. State Farm is, therefore, entitled to summary judgment that Lemoine is not entitled to punitive damages.

## CONCLUSION

For the reasons discussed above, summary judgment is granted to State Farm and judgment shall be entered in State Farm's favor on this action.[12]

**IT IS SO ORDERED**.

Dated: November 16, 2016



WILLIAM H. ORRICK
United States District Judge

---

[12] While State Farm styled its motion as one for partial summary judgment, it does not appear that any causes of action are left based on Claim 1 or Claim 2. Therefore, State Farm is entitled to summary judgment in full. I will delay entering judgment for 14 days following the entry of this Order. If either party feels that I have overlooked an existing cause of action or claim, they may notify me of that in writing within 10 days of the date of this Order.